Barrett, J.
—Sharkey was arrested under a warrant issued by me on the 23th ult., pursuant to the provisions of the act of April 26th, 1831, commonly known as “the Stilwell Act.” Upon being brought before me, he moved to quash the warrant, principally upon the ground that, before it was issued he had applied for a discharge under the bankrupt law, had been thereupon adjudicated a bankrupt, and that his proceedings had progressed so far as the appointment of an assignee and the usual conveyance to that official of the estate of the bankrupt.
The acts complained of, and which constitute the foundation for the warrant, consist of the fraudulent disposition of real estate prior to the passage of the bankrupt law. It was claimed, on behalf of the complainant, that these proceedings under the act of 1831 should neither be dismissed nor suspended because of the bankrupt law or the proceedings thereunder, for the reason that the purpose of the State act is, as its title indicates, to punish the fraudulent debtor, as well as to obtain in a summary manner the assignment of his property. I cannot assent to this proposition.
*66 The punishment of the fraudulent debtor- contemplated by the act, consists in his conviction of a misdemeanor under section twenty-six. By that section, the fraudulent disposition of property, the very act complained of here, and which entitles the creditor, under the previous sections, to this warrant, is made criminal, and is punishable as such. The arrest under the warrant issued by the civil tribunal is not for the direct purpose of punishing the fraudulent debtor. It is a civil proceeding in aid of the collection of the judgment. The act of arresting and imprisoning the debtor may of itself be said to be a punishment. If so, that punishment is merely incidental, and is only the weapon whereby the direct purpose, which is the disclosure and assignment, in a fair and just manner, of the debtor’s property, are compelled and enforced. And such is the purpose of the act, even where the proceedings are based upon a fraudulent disposition of property, which, by the debtor’s own wrongful act, "has passed' beyond his control, and which he has thus become unable to effectually assign. The imprisonment and punishment consequent thereupon, may, in that case, be the sole result of the proceedings; that is, the sole practical result; and yet, however protracted, they are still the means rather than the end. It is true that section eleven refers to persons, committed under the act, as remaining in custody in the same manner as “ other prisoners in criminal processes yet it has been held that notwithstanding this language, these proceedings are not criminal in their character, but a summary, civil remedy, to enforce the collection of a debt, and more analogous to those in chancery than in a court of law (Moak v. De Forrest, 5 Hill, 605 ; People v. Underwood, 16 Wend., 546 ; Spencer v. Hilton, 10 Wend., 608).
The question then arises, whether the property alleged to have been fraudulently disposed of passed to the assignee in bankruptcy. If it did not, it is claimed that the complainant has a perfect right to proceed under any State laws which afford him the means of recovering the property and of compelling its application to the payment *67 of, this judgment. If the property did pass to the assignee, then it is quite clear that the present proceedings are in direct conflict with the bankrupt law, and cannot be maintained. I have stated that these proceedings cannot be sustained as a mere process for the punishment of the debtor, distinct from their legitimate end, which is the application of his property to the payment of the judgment. If, therefore, that property, or the right to recover it, be vested in the assignee in bankruptcy for the equal benefit of all the creditors, it needs no argument to prove that no" one creditor can, through the agency of State laws, obtain a preference over other creditors, or the application of any part of the bankrupt’s property for his exclusive benefit. Indeed, a Pennsylvania act, very similar to this of 1831, was lately held to be completely superseded by the bankrupt law; and, for the very reason that such a preference was in direct conflict with the law, and would, of itself, constitute an act of bankruptcy, proceedings under the State act were quashed (Commonwealth v. O’Hara, 6 Am. Law Reg. N. S., 765; citing Exp. Eames, 2 Story, 322; Sturges v. Crowninshield, 4 Wheat., 122 ; Griswold v. Pratt, 9 Metc., 16). Now it is well settled by our court of last resort, that such a preference and exclusive application of the debtor’s property are the results of a successful complaint, under the act of 1831 (Spear v. Wardell, 1 N. Y. [1 Comst.], 144 ; Hall v. Kellogg, 12 N. Y. [2 Kern.], 325). "This brings us directly to the point at issue, and it seems to me that section 14 of the bankrupt law itself is decisive of it. That section explicitly provides that “all the property conveyed by the bankrupt in fraud of his-creditors * * * shall, in virtue of the adjudication in bankruptcy, and the appointment of his assignee, be at once vested in such assignee.” It is claimed that this provision, can only have, reference to fraudulent conveyances made after the passage of the act. But this proposition is based upon the argument, which I think fallacious, that the fraudulent conveyance is made illegal by the bankrupt act itself, and that thus by the opposite construction the law becomes ex post facto.
*68 The true construction of the provision, in my judgment, is that it places the assignee in the shoes of the creditors as well as of the bankrupt.
This provision was not contained in the bankrupt act of 1841, and it was held that, under that act, nothing parsed to the assignee save those legal and equitable rights which the bankrupt could himself enforce (Reaves v. Garner, 12 Ala., 661). That was one of the glaring defects of that act,- and it was undoubtedly with the view of curing it that this provision was inserted in the present act. If, then, these conveyances, however old, were fraudulent as against the creditors of the bankrupt under any law, whether common or statute, whether under the laws of the United States or of this State, they are equally fraudulent as against the assignee in bankruptcy.
The conveyances are not made illegal by the bankrupt law ; but by its force, and by virtue of the proceedings taken under it, the assignee represents and has become a trustee for all the creditors of the bankrupt, as well as for the bankrupt himself, and is vested with every right which was possessed either by the bankrupt or the creditors in respect to fraudulent conveyances.
It follows, from these views, that the motion to quash the writ must be granted and the prisoner discharged.