In re Liquidation of Citizens Bank of Elroy: Telfer and others, Appellants, vs. Davis, Special Deputy Commissioner of Banking, and another, Respondents.

*January 10—February 7, 1933.*

484

For the appellants there were briefs by *Hill & Miller* of Baraboo, and oral argument by *J. H. Hill*.

For the respondents there was a brief by the *Attorney General, J. E. Messerschmidt,* assistant attorney general, and *Henry C. Rowan* of Elroy, and oral argument by *Mr. Rowan* and *Mr. Messerschmidt*.

ROSENBERRY, C. J.   The claim made by the plaintiffs is not based on subrogation.   The plaintiffs claim that at the instant the bond of indemnity was signed and delivered, the Citizens Bank became liable to the sureties and so the sureties became creditors of the bank in the amount of the sum named in the bond, subject of course to the contingency that if the bank should perform the conditions of the bond, no claim could be asserted.   Counsel contend this state is committed to the rule that an implied contract of indemnity arises upon the signing of the bond and not as of the time of payment.   *Maryland Casualty Co. v. Hjorth,* 187 Wis. 270, 202 N. W. 665; *Momsen v. Noyes,* 105 Wis. 565, 81 N. W. 860; *Citizens' State Bank of Rice Lake v. Nelson,* 204 Wis. 228, 235 N. W. 398.   With this contention we agree.

Counsel's main reliance is upon *United States F. & G. Co. v. Centropolis Bank,* 17 Fed. (2d) 913, 53 A. L. R. 295.   In that case the court of appeals for the Eighth circuit held:

"It is well settled that when a contract of suretyship is made there arises, in the absence of an express agreement, an implied contract that the principal will indemnify the

surety for any payment the latter may make to the creditor in compliance with the contract of suretyship. This implied contract arises when the suretyship is made, and not when the payment is made by the surety thereunder. The relation of debtor and creditor exists between the principal and surety from the time the contract of suretyship is made. The payment relates back to the time when the contract was entered into by which the liability to pay was incurred, fixes the amount of damages for which the principal is liable to the surety, and matures the cause of action therefor." (Citing cases.)

We concur in the view of the circuit court of appeals as stated but are of the opinion that counsel misinterprets the holding in that case. In that case the defendant bank failed owing Jackson county $122,324.59. As security it had the bond of the plaintiff in the sum of $50,000 and the bond of the Maryland Casualty Company in the sum of $50,000. Jackson county filed its claim with the finance officer for the sum of $122,324.59. The contention of the surety was that the county was entitled to receive dividends only on $22,324.59 or the amount which was unsecured. The court held that the county was entitled to receive dividends on the full amount of its claim until it had received $22,324.59. This would leave still owing to Jackson county the sum of $100,000, represented by the two surety bonds. The question was whether or not, having paid the amount of the bond, the sureties could file a claim against the finance officer. The conclusion of the court is stated as follows:

"It follows that the surety company became a creditor of the bank on May 19, 1923, when the county depository bond was executed and delivered; that the surety company was a creditor of the bank when the bank became insolvent, closed its doors and went into the hands of the deputy commissioner of finance for the purposes of liquidation on November 14, 1924; that upon the payment by the surety company of the penalty of the bond on May 7, 1925, a

cause of action accrued in its favor against the bank, which had its inception in the contract of indemnity, and which related back to the date of the contract of suretyship made May 19, 1923."

The question then was what remedy the surety had upon its cause of action which arose upon the payment of the claim. Not without some effort the court held that although the claim accrued after the bank was closed and placed in process of liquidation that circumstance would not prevent the surety company from having its claim allowed, and held that the surety company was a creditor within the meaning of the statutes of Missouri referred to in the opinion.

It is not necessary for us to determine in this case whether the rule laid down in *United States F. & G. Co. v. Centropolis Bank* is sound or not. The situation with which the court there dealt has no parallel in the facts of this case. Here the sureties have not paid; their cause of action has therefore not accrued except as to the amount of the claim of Juneau county against the defendant assigned to the sureties. If the sureties in this case had paid the full penal sum of the bond and that was insufficient to cover the liability of the bank to Juneau county, this case would be parallel to the *United States F. & G. Co. v. Centropolis Bank Case*. It is stated in the finding that Juneau county has filed no claim with respect to its funds on deposit. On the other hand, in briefs of counsel language is used which indicates that a claim had been filed. If Juneau county fails to file its claim against the bank and the plaintiffs are thereby deprived of the benefit of any dividend which the county might have received had it duly filed its claim, a serious question would be raised as to whether or not the bond would not be discharged *pro tanto*. The claim of the plaintiffs that they should be permitted to file a claim on

their contract of indemnity for the full amount, $16,674.46, and that the county is entitled to a claim for a like amount and that the liability should be reduced by dividends on both claims, cannot be sustained. Juneau county and the sureties are rightly entitled to the benefit of a dividend on the amount owing by the bank to the county on the day of its failure and no more. If such a claim has not been filed, the matter should be opened and permission given to file such a claim either by the county or, if the county has been paid, by the sureties. In order that the matter may be open for further consideration, the order appealed from will be reversed.

The question decided in the *United States F. & G. Co. v. Centropolis Bank Case, supra,* does not arise in this case because the amount of the bond exceeds the amount owing by the bank to Juneau county. While as a matter of legal theory the relation of debtor and creditor may exist between the principal and surety from the time of delivery of the bond, no cause of action accrues until the surety has sustained a loss because it has been obliged to pay. The case relied on does not hold that there can be a double dividend on account of the same indebtedness, one to the surety and one to the principal. It was held that as against the surety the principal should receive dividends on the full amount of its claim until the amount owing in excess of the bonds was paid.

*By the Court.*—The order appealed from is reversed, and cause remanded for further proceedings. No costs to be taxed, appellants to pay the clerk's fees.